# Exhibit 1

23VECV00065

Assigned for all purposes to: Van Nuys Courthouse East, Judicial Officer: Shirley Watkins

Electronically FILED by Superior Court of California, County of Los Angeles on 01/06/2023 11:23 AM David W. Slayton, Executive Officer/Clerk of Court, by A. Salcedo,Deputy Clerk

MARLA TAUSCHER, SBN 259630
225 S. Lake Ave., Ste. 300
Pasadena, California 91101
Phone: (626) 345-5777
Fax: (760) 444-2742
e-mail: marla@attymat.com

Attorney for Plaintiffs
Cory Lennon and Mollie Flanigan

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

### VAN NUYS COURTHOUSE EAST

| | |
|---|---|
| CORY LENNON, an individual and MOLLIE FLANIGAN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, and DOES 1-50, inclusive,<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Violation of 42 U.S.C §1983 (Fourth Amendment);<br>2. Violation of 42 U.S.C. §1983 (Fourteenth Amendment);<br>3. Violation of California Constitution Art. 1, §§7 and 13;<br><br><br><br>**REQUEST FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES
1

**EXHIBIT 1 - Page  8**

Plaintiffs, CORY LENNON and MOLLIE FLANIGAN, by and through their undersigned counsel, bring this complaint for damages, alleging as follows against Defendant City of Los Angeles (hereinafter "City"):

## I.    JURISDICTION AND VENUE

1.    The Court has jurisdiction over this action pursuant to 42 U.S.C. §1983 and California Constitution Article 6 §10.

2.    This Court has jurisdiction over the Defendant, because they are residents and/or conducting business in the State of California.  This Court further has jurisdiction over Defendant because the City of Los Angeles is liable for public employees and private contractors pursuant to *California Government Code §815.2 and 815.4.*

3.    Venue is proper in this Court pursuant to California Code of Civil Procedure Sections 393 and 394 because Defendants are located in and/or conducting business in the City of Los Angeles, California.

4.    Plaintiffs are not required to allege compliance with government claims statutes as those provisions are inoperative to a claim pursuant to *42 U.S.C. §1983.*

## II.    PARTIES

5.    Plaintiffs are, and at all times mentioned herein, residing in the City of Los Angeles, County of Los Angeles in the State of California.

6.    Plaintiffs CORY LENNON (hereinafter "CORY") and MOLLIE FLANIGAN (hereinafter "MOLLIE") are the owners of a dog named Ruby, who was shot by officers of the Los Angeles Police Department (hereinafter "LAPD").

7.    Defendant City of Los Angeles is a political subdivision of the State of California duly organized and existing under the laws of the State of California.  Defendant is liable for the conduct of its personnel, including the Los Angeles Police Department.

8.    Defendants DOES 1 to 100, inclusive, are sued herein under fictitious names.  Their true names and capacities are not currently known to Plaintiffs.  When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities.

## EXHIBIT 1 - Page  9

9.    Plaintiffs are informed and believe and herein allege that each of the fictitiously named defendants is responsible for the harm set forth herein and that Plaintiffs' damages as herein alleged were caused by those defendants.

**III.    FACTUAL BACKGROUND**

10.    On or about the afternoon of November 4, 2021, at about 2:30 p.m., Cory and Mollie were at home with their nine-month-old daughter, when they heard voices that sounded like they were coming from a radio of some kind, from the front of their house.

11.    Mollie, who was holding their baby at the time, went toward the front door to see what the source of the noise was.

12.    Cory was right behind Mollie as she approached the door, but got in front or her as she opened it.

13.    When Cory stepped out the door, he saw two (2) uniformed LAPD officers in the driveway of the family's house, a few feet from the front door.

14.    One of the officers had a loaded shotgun aimed directly at Ruby, who was in the driveway near the gate to the backyard of the house, approximately fifty (50) feet away from the street.

15.    Just as Cory was opening the door, the LAPD officer shot Ruby in the head, right between her eyes, with a beanbag round, from two (2) or three (3) feet away.

16.    One of the LAPD officers yelled at Mollie to go back in the house with the baby.

17.    Ruby had been in the backyard when the LAPD officers arrived and only came out onto the driveway after the officers repeatedly enticed her out.

18.    The LAPD officers were hunting Ruby from the street, trying to lure her out of the backyard so they could shoot her.

19.    In fact, one or both of the LAPD officers could be heard saying, "Come here" and whistling to Ruby to entice her out of the backyard as they advanced up the Plaintiffs' driveway.

20.    Ruby came out of the backyard and remained in the driveway, while the officers advanced approximately 45-50 feet up the driveway toward her.

21.    One LAPD officer had a night stick in his hand.  The other had a loaded shotgun that he had pumped and ready to fire as soon as he exited the LAPD vehicle across the street from Plaintiffs' house, before entering Plaintiffs' property.

22.    Ruby was not aggressive with the LAPD officers; her tail was wagging as they approached her with a loaded shotgun.

23.    As the officers got closer to Ruby, she retreated and was near the front of Plaintiffs' residence when one of the LPAD officers shot her in the head.

24.    When she was shot in the head, Ruby was between two vehicles and only a few feet from the gate to the backyard out of which she had been lured by the LAPD officers, whistling and calling to her.

25.    One of the LAPD officers was heard calling his supervisor, *before* the officers entered Plaintiffs' property, because he knew he and/or his partner intended to shoot Ruby and that their supervisor would have to complete an incident report after the discharge of the shotgun.

26.    Ruby immediately ran into the backyard after the LAPD officer shot her in her head, right between her eyes.

27.    As Cory was stepping out the front door, one of the officers yelled at him, "Go secure your dog right now!" even though Ruby was already out of sight and in the backyard.

28.    Cory and Mollie wanted to take Ruby to the veterinarian right away to treat her gunshot injury, but they were told that they could not because one of the officers had already called their supervisor and they had to wait for her to arrive.

29.    Cory asked the LAPD officers to leave their property and wait for the supervisor from their vehicle or the sidewalk, but they refused to leave the property.

30.    When Cory approached the officers, he exclaimed, "You shot my dog right between the eyes!"

31.    The officer responded, "Aren't you glad it was with this and not this [gesturing to his handgun on his belt]?"

32.    One of the LAPD officers told Cory that he should be thanking the officers because they shot Ruby with a shotgun rather than a handgun.

COMPLAINT FOR DAMAGES
4

**EXHIBIT 1 - Page  11**

33.     Until their supervisor arrived, about 20-30 minutes later, the two officers stood in the driveway arguing with Cory and taunting him, making unprofessional, inflammatory, and childish comments.

34.     The LAPD officers repeatedly addressed Cory as "Bro", while simultaneously provoking and antagonizing him.

35.     One of the officers repeatedly pointed to his handgun and told Cory he should be grateful that the officer didn't shoot Ruby with the handgun.

36.     When Cory asked the officer if he would shoot a chihuahua with that gun, the officer responded, "No, because a chihuahua I can kick like a football."

37.     The officer also repeatedly referred to Ruby as a "target" as if that somehow justified shooting her at her own home.

38.     One of the officers was heard saying that if Ruby had been in the street, he would have "blown her head off!"

39.     That was the same LAPD officer who told Cory that if he were visiting his friend's house, and his friend's dog showed its teeth, the officer would shoot his friend's dog.

40.     At one point, one of the LAPD officers claimed that all he and his partner were trying to do was to go to the front door to let Cory and Mollie know their dog was "loose".

41.     That claim is false, given that the officers made no attempt to communicate with Cory or Mollie until *after* they shot Ruby, despite the fact that the front windows of the house were open and they could have called out to anyone inside, but did not.

42.     In any event, Ruby was not "loose". She was on the property of her owners from the time LAPD officers arrived until they left.

43.     The officer(s) admitted that Ruby had not attacked them or harmed them in any way and tried to justify shooting her telling Mollie, "***We don't know what a dog is going to do***…" and again gesturing to his handgun, and telling Mollie she should be happy they did not shoot Ruby with that gun.

44. After arguing with Cory for about 20-30 minutes, before the LAPD supervisor arrived, one of the officers told Cory that they had received a call about a loose dog in the neighborhood.

45. LAPD officers did not respond to Plaintiffs' residence for over an hour after receiving that call.

46. Los Angeles Animal Services (hereinafter "LAAS") is the agency responsible for handling loose dogs and other animal related matters for the City of Los Angeles and should have been the agency to handle this situation.

47. LAPD officers inexplicably did not make any attempt to contact LAAS until hours after shooting Ruby, after 5:00 p.m.

48. Before LAPD officers arrived at Plaintiffs' home, Ruby had gone out of the yard and wandered down the street, but did not bite or attack anyone.

49. The person who called LAPD was parked and sitting in a black Chevy Tahoe, across the street from Plaintiffs' house for well over an hour before LAPD responded.

50. When the LAPD officers arrived on Plaintiffs' street, they spoke with the woman in the Tahoe, who lied to the officers, telling them that she saw Ruby attack people.

51. Eventually, the LAPD officers left Plaintiffs' residence, without issuing any citation or taking any further action.

52. Fortunately, Ruby survived the shooting, but her recovery took months, as she was not only physically injured, but emotionally scarred as well.

53. Ruby became very nervous and fearful for several months, but has since returned to her normal, friendly, docile self.

54. Cory searched for months for the bean bag projectile that was shot at Ruby from point blank range.

55. Cory found the bean bag on the roof of the back part of the garage, approximately sixty (60) feet away from where Ruby had been standing, after it flew over the house.

56. It is clear that the two LAPD officers had no plan whatsoever to address what they claimed was a report of a loose dog.

57.     They did not have any equipment for containing a dog, nor did they contact LAAS for more than two (2) hours *after* they shot Ruby.

58.     The LAPD officers had one objective – to hunt and shoot Ruby on her own property.

59.     Since the invasion of their property and shooting of their dog, Ruby, by LAPD officers, Plaintiffs no longer feel safe in their home because they do not trust LAPD to "protect and serve" their interests.

### FIRST CAUSE OF ACTION/CLAIM FOR RELIEF

### Violation of 42 U.S.C. §1983

### (Fourth Amendment to the United States Constitution)

60.     Plaintiffs repeat, re-allege and incorporate by reference all of the allegations in paragraphs 1 – 59 as if fully set forth herein.

61.     42 U.S.C. § 1983 was intended to create tort liability in cases involving violations of rights, privileges or immunities secured to people by the United States Constitution.

62.     The purposes of 42 U.S.C. §1983 are to compensate victims for harm and to deter further unconstitutional acts under the law.

63.     The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures of property.

64.     There was nothing reasonable about the search of Plaintiffs' property by LAPD officers:

    a.  LAPD officers knew, or should have known, that they had no valid authority or grounds to enter Plaintiffs' property;

    b.  LAPD officers were acting under color of State law at the time they shot Ruby, who was on Plaintiffs' property the entire time that LAPD was present;

    c.  LAPD officers had neither consent, nor a search warrant, to enter Plaintiffs' property;

    d.  At no time did LAPD officers seek or obtain consent to enter Plaintiffs' property.

**EXHIBIT 1 - Page 14**

e.   Nonetheless, officers entered Plaintiffs' property, whistling and calling to Ruby, to entice her out of the backyard so they could shoot her;

f.   LAPD officers made no attempt to contact LAAS, the agency responsible for responding to calls related to animals, until hours after shooting Ruby.

65.   LAPD officers violated Plaintiffs' Fourth Amendment rights when they entered onto Plaintiffs' property, conducted a warrantless search of the property, without consent, and shot Plaintiffs' dog after enticing her out of the backyard, and hunting her in Plaintiffs' driveway.

## SECOND CAUSE OF ACTION/CLAIM FOR RELIEF

### Violation of 42 U.S.C. §1983

### (Fourteenth Amendment to the United States Constitution)

66.   Plaintiffs repeat, re-allege and incorporate by reference all of the allegations in paragraphs 1 – 59 as if fully set forth herein.

67.   §The Fourteenth Amendment to the United States Constitution guarantees the right of any person not to be deprived of life, liberty, or property by the State without due process of law.

68.   When LAPD officers trespassed on Plaintiffs' property and shot the family dog, they were acting under color of State law.

69.   LAPD officers caused considerable injury to Ruby, resulting in veterinary expenses to treat her, depriving Plaintiffs of money as well as time and effort to care for Ruby while she recovered from her injuries over subsequent months.

70.   LAPD officers had no legal basis for entering Plaintiffs' property, nor did they have a basis for shooting and injuring Ruby, who was not "at large" at any time while officers were present and posed no threat to them.

71.   Although LAPD officers did not succeed in killing Ruby, the injury they so viciously inflicted on her was devastating to her family and deprived them of a substantial sum of money without due process.

72.    As law enforcement officers in California, LAPD officers took an oath of office that requires them to "support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California".

73.    In fact, in its Mission Statement, LAPD states, "It is the mission of the Los Angeles Police Department *to safeguard the lives and property* of the people we serve, to *reduce the incidence of fear and crime*, and to enhance public safety while working with the diverse communities to improve their quality of life.  Our mandate is to do so *with honor and integrity, while at all times, conducting ourselves with the highest ethical standards to maintain public confidence.*" [emphasis added].

74.    LAPD officers failed to adhere to any part of the department's mission statement in this case:

a.    They seriously endangered the life of Plaintiffs' dog, Ruby, and Plaintiffs themselves by discharging a shotgun toward Plaintiffs' residence with no regard for public safety;

b.    They increased Plaintiffs' fear by demonstrating their reckless disregard for Plaintiffs, their child, and their dog, Ruby;

c.    They did not conduct themselves with "honor and integrity" or with "the highest ethical standards.  In fact, they acted dishonorably, observing no ethical standards, first by shooting Ruby, then taunting Cory and making unprofessional and childish remarks and thinly veiled threats to him for nearly half an hour after shooting Ruby.

75.    LAPD officers failed to act with even minimal care to ensure that Plaintiffs and their property were not harmed by their conduct.

76.    LAPD officers failed to even adhere to even the agency's stated mission and core values when they intentionally and knowingly entered Plaintiffs' property and shot the family

dog without considering any other plan of action, including calling animal control (LAAS), the city agency that is specifically tasked with handling animal related complaints.

77.    In this instance, acting under color of State law, two LAPD officers illegally entered Plaintiffs' property without any warning or consent, and shot Plaintiffs' dog, Ruby.

78.    There were indicia that Plaintiffs were home at the time, e.g., two cars in the driveway, front windows open, from which a reasonable person would have understood that the residents were present on the property.

79.    Nonetheless, the LAPD officers were undaunted by the evidence before them, and recklessly proceeded onto Plaintiffs' property, and immediately shot Ruby in the face, without any provocation and without making any attempt to communicate with Plaintiffs before shooting her.

80.    The conduct of the LAPD officers was appalling and extremely dangerous, indicating little to no regard for the safety of Plaintiffs, their dog, Ruby, or the public at large.

81.    The unprovoked, unwarranted shooting of Ruby was the sole cause of injury to Ruby.

82.    As a direct result of the conduct of LAPD officers, Plaintiffs remain fearful of LAPD and do not feel like LAPD officers will protect them or their property in case of an emergency, because they have demonstrated that they will not.

83.    As a direct result of the conduct of LAPD officers, Plaintiffs continue to suffer from nightmares, flashbacks, and increased fear and anxiety that she did not have prior to the reckless shooting of Ruby.

84.    LAPD officers violated Plaintiffs' Fourteenth Amendment rights when they intentionally trespassed on Plaintiffs' property, shot and injured their dog, Ruby, and deprived them of their money in veterinary expenses, without due process.

### THIRD CAUSE OF ACTION/CLAIM FOR RELIEF

### Violation of California Constitution Art. 1, Sections 7 and 13

85.    Plaintiffs repeat, re-allege, and incorporate by reference all of the allegations in paragraphs 1- 59 as if fully set forth herein.

86.     The California Constitution, in section 7 of Article 1, prohibits the deprivation of life, liberty, or property by State actors, without due process.

87.     The California Constitution, in section 13 of Article 1, prohibits unreasonable search and seizure of property without a search warrant.

88.     Defendant City of Los Angeles, through LAPD, has deprived Plaintiffs of their property during an unreasonable search and seizure of Plaintiffs' property, as set forth *supra*.

WHEREFORE, Plaintiffs pray for relief as set forth below:

1.  Actual damages, statutory damages, punitive damages, and such other relief as provided by applicable statutes;

2.  The costs of bringing this suit, including attorneys' fees pursuant to *42 U.S.C. §1988, California Code of Civil Procedure §1021.5*, or other statute; and

3.  All other relief to which Plaintiffs may be entitled in law or equity.

4.  Such other relief as this Court deems just, proper, and equitable.

Dated: January 5, 2023

By: _____
Respectfully Submitted,

Marla Tauscher,
*Attorney for Plaintiffs Cory Lennon
and Mollie Flanigan*

COMPLAINT FOR DAMAGES

**EXHIBIT 1 - Page  18**